# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

PAUL E. MULLEN II M.D.                                            PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:11cv351-KS-MTP

NATIONWIDE MUTUAL INSURANCE
COMPANY                                                           DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Third Motion for Summary Judgment [79] of the Defendant Nationwide Mutual Insurance Company ("Nationwide"). For the reasons stated below, the Court finds that the motion is well taken and should be granted.

## I. BACKGROUND

On September 20, 2011, Plaintiff Paul E. Mullen, II, M.D. ("Dr. Mullen" or "Plaintiff"), brought this action against Nationwide alleging negligent misrepresentation and other claims relating to his payment of premiums to Nationwide for homeowners insurance on a dwelling constructed in 1995 and located at 10733 Plantation Lane, Gulfport, Mississippi, 39503 (the "subject dwelling"). The subject dwelling was extensively damaged by Hurricane Katrina in 2005. Plaintiff's central complaint is that although Nationwide was aware that the subject dwelling was no longer habitable and that its contents and interior were destroyed by Hurricane Katrina, it advised him that he must maintain full coverage on the property, including coverage for other structures and personal property, to ensure coverage continuity. Plaintiff thus alleges that he paid exorbitant premiums on an annual basis from 2006 to 2010 for an insurance policy that

was essentially worthless and of no benefit to him.

On August 7, 2012, Nationwide filed its First Motion for Summary Judgment [64]. Through this motion, Nationwide contended that all of Plaintiff's claims were released or waived pursuant to a Confidential Settlement Agreement ("CSA") dated December 1, 2006. The CSA resulted from a separate lawsuit filed by Dr. Mullen against Nationwide in this Court on May 11, 2006. (*See* Compl. [1] in Case No. 1:06cv472.) The Court has granted Nationwide's First Motion for Summary Judgment [64] only with respect to Plaintiff's claims based upon his renewal of insurance in 2006. (*See* Memorandum Opinion and Order [91].)

On August 9, 2012, Nationwide filed its Second Motion for Summary Judgment [67]. Through this motion, Nationwide asserted that Dr. Mullen's claims were time-barred under sections 15-1-33 and 15-1-49 of the Mississippi Code. The Court has granted Nationwide's Second Motion for Summary Judgment [67] only with respect to Plaintiff's claims arising from his 2007 and 2008 insurance renewals. (*See* Memorandum Opinion and Order [91].)

On August 31, 2012, Nationwide filed its Third Motion for Summary Judgment [79]. For numerous reasons, Nationwide contends that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. This motion has been fully briefed and the Court is ready to rule.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted), *cert. denied*, 131 S. Ct. 2972 (2011). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986)), *cert. denied*, 132 S. Ct. 2103 (2012).

**B.    Analysis**

Plaintiff's Complaint [1] alleges four causes of action: 1) breach of the duty of good faith and fair dealing; 2) negligent misrepresentation; 3) excessive rate standards; and 4) unjust enrichment.[1] (*See* Compl. [1].) Underlying the Complaint is Plaintiff's allegation that he paid exorbitant premiums for the renewal of his Insurance Policy No. 63 23 MP 682383 (the "Policy") with Nationwide in 2006, 2007, 2008, 2009 and 2010. The Policy was renewed and premiums were paid in or about April of each of these years. The Court has found summary judgment appropriate as to Plaintiff's claims based upon the 2006, 2007 and 2008 Policy renewals, applying the defenses of release and accord and satisfaction to the 2006 claims and the applicable statute of limitations to the 2007 and 2008 claims. (*See* Memorandum Opinion and Order [91].) With respect to Plaintiff's remaining claims based upon the 2009 and 2010 Policy renewals, the Court will first address count three of the Complaint, excessive rate standards. Nationwide ties the issue of subject matter jurisdiction to this count and both parties initially focus on it in their summary judgment briefing. All other causes of action will be addressed in the order they are asserted in the Complaint [1].

**1.    Excessive Rate Standards (Count Three)**

Count three of the Complaint [1] alleges that the Policy premiums paid by Dr. Mullen were excessive or unfairly discriminatory under section 83-2-3 of the Mississippi Code, and demands reimbursement of the premiums. Section 83-2-3 provides that

---

[1] Count five of the Complaint asserts a claim for punitive damages. (*See* Compl. [1] at ¶ XXIV.)

insurance rates must "not be excessive, inadequate or unfairly discriminatory", and lists several criteria for determining whether such rates make or miss the mark. The Mississippi Commissioner of Insurance is charged with enforcement of this statute. *See* Miss. Code Ann. § 83-2-29(1) ("If the commissioner finds that any person or organization has violated any provision of this chapter, the commissioner may impose a penalty in accordance with Section 83-3-85.").

The Jackson Division of this Court has found that section 83-2-3 is regulatory in nature and affords no private right of action. *See Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 754 (S.D. Miss. 2002). Nationwide asserts that *Wells* requires that summary judgment be granted on count three of the Complaint. Plaintiff does not argue otherwise. "Nationwide correctly states that Mullen has confessed this claim, and the parties agree that no private cause of action exists under Miss. Code Ann. § 83-2-3." (*See* Pl.'s Mem. in Opp. [87] at p. 10.) Therefore, in accordance with *Wells* and the Plaintiff's confession, the Court will grant summary judgment in favor of Nationwide as to Plaintiff's "excessive rate standards" claim.

However, this does not end the inquiry as to section 83-2-3. Nationwide goes on to argue that this Court lacks subject matter jurisdiction over all of Plaintiff's claims since each one presupposes payment of excessive or unfair premiums per section 83-2-3 and the validity of the premiums can only be adjudicated in a regulatory setting by the Mississippi Commissioner of Insurance. Nationwide's argument is not well taken.

First, this Court has subject matter jurisdiction over this cause pursuant to Title 28 U.S.C. § 1332 because (1) the parties are of diverse citizenship and (2) the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

(*See* Compl. [1] at pp. 1, 9.) Nationwide raises no challenge with respect to either of these essential requirements for diversity jurisdiction. Thus, the Court's jurisdictional authority over the subject matter of this cause remains sound.

Second, Judge Barbour's opinion in *Wells* does not require the dismissal of this case on the basis of a lack of subject matter jurisdiction. In *Wells*, the court's consideration of section 83-2-3 took place in the context of a fraudulent joinder analysis. *See* 217 F. Supp. 2d at 754-55. As noted above, the court found that section 83-2-3 failed to afford any private right of action. *See id.* at 754. The court thus held that there was no possibility of recovery by the plaintiffs against a non-diverse defendant on a civil conspiracy claim relying on a violation of the statute. *See id.* at 755. Consequently, the non-diverse defendant's citizenship was disregarded for purposes of diversity and plaintiffs' motion to remand was denied. *See id.* at 755-56. The Court did not hold that it lacked subject matter jurisdiction over plaintiffs' conspiracy claim or a related claim of negligent misrepresentation against any of the defendants, diverse or non-diverse.

Third, the Mississippi Supreme Court has held that conduct prohibited by insurance regulations can also meet the elements of a common law tort. *See Protective Serv. Life Ins. Co. v. Carter*, 445 So. 2d 215, 216, 219-20 (Miss. 1984). In *Carter*, the court noted that statutes prohibiting unfair insurance practices did not provide for a private cause of action. *See id.* at 219. The court nonetheless found that defendant's violations of state regulations regarding the replacement of insurance established proof of malicious interference with business relations, and remanded for a determination of

damages.  *See id.* at 216, 219-20.  In accordance with *Carter*,[2] the dismissal of count three of the Complaint [1] on the basis that no private right of action exists under section 83-2-3 does not compel the dismissal of Dr. Mullen's common law claims.  Dr. Mullen's remaining claims will stand or fall on their own merits.  *Cf. Watson v. First Commonwealth Life Ins. Co.*, 686 F. Supp. 153, 155-56 (S.D. Miss. 1988) (finding that the plaintiff could not proceed on an unfair insurance practices allegation under Miss. Code Ann. § 83-5-33 since the statute did not provide for private civil actions, but considering the dismissal of plaintiff's fraud and misleading advertising claims on separate grounds).

### 2. Breach of the Duty of Good Faith and Fair Dealing (Count One)

"All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement."  *Limbert v. Miss. Univ. for Women Alumnae Assoc., Inc.*, 998 So. 2d 993, 998 (¶ 11) (Miss. 2008) (citing *Morris v. Macione*, 546 So. 2d 969, 971 (Miss. 1989)).  Good faith has been described as "faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party", while bad faith has been characterized as "more than bad judgment or negligence; rather, bad faith implies some conscious wrongdoing because of dishonest purpose or moral obliquity."  *Id.* (citations and internal quotation marks omitted).  A mere exercise of a contractual right will not be found to breach the implied covenant of good faith and fair dealing.  *See Lambert v. Baptist Mem'l Hosp.-N. Miss.*,

---

[2] The Court is bound by the decisions of Mississippi's highest court on issues of substantive law in this action founded on diversity jurisdiction.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

*Inc.*, 67 So. 3d 799, 804 (¶19) (Miss. Ct. App. 2011), *cert. denied*, 69 So. 3d 9 (Miss. 2011). Relatedly, "to have a breach of the duty of implied good faith and fair dealing there must first be an existing contract and then a breach of that contract." *Daniels v. Parker & Assocs., Inc.*, 99 So. 3d 797, 801 (¶ 13) (Miss. Ct. App. 2012).

Dr. Mullen alleges that he was misled at the time of each Policy renewal when Nationwide represented "that he must maintain full coverage on the dwelling, other structures, personal property, and loss of use to be properly insured to maintain coverage continuity." (Pl.'s Mem. in Opp. [87] at p. 3.) This alleged wrongdoing goes toward the formation or making of each Policy renewal. The implied covenant of good faith and fair dealing "runs, however, with respect to the 'performance and enforcement' of the contract, not to its negotiation or formation." *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 358 (S.D. Miss. 2003) (citing *Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811, 824 (S.D. Miss. 2002); *Baldwin v. Laurel Ford Lincoln-Mercury, Inc.*, 32 F. Supp. 2d 894, 899 (S.D. Miss. 1998)), *aff'd sub nom. Smith v. Crystian*, 91 Fed. Appx. 952 (5th Cir. 2004).

Dr. Mullen further complains that he paid exorbitant premiums on a worthless insurance Policy that was of no benefit to him because Nationwide knew that it would deny any property damage claim made under the Policy. (*See* Pl.'s Mem. in Opp. [87] at pp. 3, 6.) Yet, Dr. Mullen has not alleged any actual breach of the insurance contract, such as Nationwide failing to pay a covered claim. Dr. Mullen testified at deposition that he made no claim under the Policy during any time period relevant to this action. (*See* Dr. Mullen Dep. [79-2] 30:7-17.) An analogous situation was presented in the case of *Frye v. Southern Farm Bureau Casualty Insurance Co.*, 915 So. 2d 486 (Miss. Ct. App.

2005). There, plaintiffs alleged, *inter alia*, breach of the duty of good faith and fair dealing in relation to a purported fraudulent scheme involving the sale of automobile disability income coverage. 915 So. 2d at 488-89 (¶ 4). Plaintiffs contended that the insurer knew that the policy holders of this "coverage would not know of its 'inadequate, unnecessary and 'phantom' nature and that the actual loss experience for this coverage would be minimal, if non-existent.'" *Id.* Plaintiffs' breach of the implied covenant allegation failed because they never requested benefits under their respective polices for disability coverage. The trial court correctly "held that there can be no claim for tortious breach of contract or breach of the covenant of good faith and fair dealing because there was no denial of benefits or failure to provide the Appellants any of the benefits they could have expected from the contract." *Id.* at 492 (¶ 18). Without a breach of contract, plaintiffs' claims failed as a matter of law. *See id. Frye* weighs heavily against Dr. Mullen's "worthless" Policy allegation since he too never made a claim under his insurance contract. *See also Howard*, 195 F. Supp. 2d at 824 (rejecting breach of good faith and fair dealing claim where plaintiffs allegedly paid "an exorbitant and grossly unfair premium" for "inadequate insurance"), *aff'd sub nom. Ross v. Citifiancial, Inc.*, 344 F.3d 458 (5th Cir. 2003).

Because Dr. Mullen's allegations of wrongdoing relate to the making or negotiation of each Policy renewal, as opposed to the performance or enforcement of the Policy, and because no breach of the Policy has been alleged, summary judgment is appropriate on his breach of the duty of good faith and fair dealing claim.

### 3. Negligent Misrepresentation (Count Two)

The following elements must be proven in order to establish negligent

misrepresentation:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Mladineo v. Schmidt*, 52 So. 3d 1154, 1164-65 (¶ 39) (Miss. 2010) (citations omitted). Plaintiff's negligent misrepresentation claim fails on the first required element. Plaintiff has offered proof of certain representations made by representatives of the Denison Insurance Agency[3] in relation to the renewal of the Policy. However, no evidence has been presented tending to show the falsity of these representations.

It is undisputed that Dr. Mullen had no direct communications with anyone at Nationwide or the Denison Insurance Agency (the "Denison Agency") with respect to renewals of the Policy. (*See* Dr. Mullen Dep. [79-2] 52:15-20.) Dr. Mullen authorized Lisa Quave, his internal bookkeeper and office manager for his cardiology practice, to communicate with the Denison Agency and Nationwide concerning Policy renewals. (*See* Dr. Mullen Dep. [79-2] 18:24-19:2, 52:11-14, 89:1-9; Doc. No. [79-33] at pp. 1, 7-8.) Ms. Quave has provided the following testimony regarding representations made by individuals with the Denison Agency concerning Policy renewal:

> Q. Okay. All right. This suit is based on allegations that someone from the Denison agency misrepresented something to Dr. Mullen or to you about the policy of insurance that was renewed five times after Hurricane Katrina. Are you the person to whom misrepresentations were made?

---

[3] David L. Denison was Nationwide's agent with respect to the issuance of Dr. Mullen's Policy. (*See* Doc. No. [79-7 at ECF p. 4].)

A. I'm the one that spoke to the Denison office.

Q. Let me ask the question –

A. Yes, sir.

Q. – again. You're the person that misrepresentations were made to?

. . . .

Q. I'm just telling you, this lawsuit is about an allegation that somebody at the Denison agency made misrepresentations to Dr. Mullen. Okay? Accept that as true?

A. Yes.

Q. Dr. Mullen has stated he had no conversations himself with the Denison agency or Nationwide and all conversations were with Denison and you. And let's be clear about this. You didn't have any personal conversations yourself with anybody other than the Denison agency people; right?

A. Correct. Yes.

Q. You never talked to anybody at the Nationwide home office or anybody on salary with Nationwide itself; correct?

A. Correct.

Q. It's all with the Denison agency.

A. Correct.

Q. So if Dr. Mullen had something misrepresented to him and he never heard anything spoke to him because nobody conversed with him and you had all the communications with Denison, I am deducing, maybe wrongly, that the misrepresentation must have been spoken, if to anybody, to you. You see where I'm going?

A. Yes.

Q. Now, can you tell me of any misrepresentation that you know of that the Denison agency made about Dr. Mullen's policy to you?

A. I'm not sure if I understand the question.

-11-

Q. Well, do your best. I'll let you –

A. Okay. Well, the conversation when we would renew, each time the renewal came in, we would call the Denison office, and either I'd speak to Mr. Denison or Melinda. And we'd ask the question: Is there any way that we can lower this, the premium, so – you know, it was just extremely high for a – for something that wasn't really livable. And each time they told me that if we did – if we cancelled it, then we would not be able to get coverage for that property –

Q. Okay.

A. – for that –

Q. Let's stop right there before you tell me any more. Do you have any reason to think that statement, if you cancel the policy, you may not be able to get coverage on this, was untrue?

A. I don't know.

Q. Okay. Now, go on. Is there more to it than that?

A. That was it.

. . . .

A. They told me if we cancelled the policy that we would not be able to get coverage. That's what they told me.

. . . .

Q. The Denison agency, someone at the Denison agency, stated to you that if he did not continue to renew his policy with Nationwide – am I okay so far? That part's accurate?

A. Yes.

Q. All right. Move to the next. If he did not continue to renew his policy with Nationwide, he might not be able to continue to get coverage in the future on the same – get the same coverages in the future? Have I stated that fairly?

A. Yes.

>   Q. Okay. Did I mess up any of that?
>
>   A. No, sir.
>
>   Q. Is there more to it than that? Is there more to the statement said to you by Denison than what I just said?
>
>   A. No, sir.

(Quave Dep. [79-29] 24:1-12, 25:3-27:6, 38:2-4, 38:21-39:13.)

Plaintiff has failed to offer any evidence showing the falsity of the preceding representations made to Ms. Quave by the Denison Agency. In other words, there is no proof that Dr. Mullen would have been able to get the same coverage for the subject dwelling that was in place prior to each Policy renewal had he subsequently opted to cancel or not renew the Policy. In fact, the summary judgment evidence tends to show the opposite—that what Ms. Quave was told was true. (*See* Dr. Mullen Dep. [79-2] 54:25-56:11; Nationwide 30(b)(6) Dep. [79-5] 53:1-10, 65:20-66:19; Denison Dep. [79-23] 11:11-24.)

Furthermore, Dr. Mullen has testified that he knew prior to each Policy renewal the limits and costs of the coverage he was purchasing. (*See* Dr. Mullen Dep. [79-2] 16:5-17:17.) Dr. Mullen also certainly knew at the time each premium was paid that the subject "dwelling was uninhabitable and that no personal property was located therein . . . ." (Pl.'s Mem. in Opp. [87] at p. 2.) Perhaps that is why Dr. Mullen thought the premium "was exorbitant" and that Nationwide was "gouging" him before the end of each Policy renewal period. (*See* Dr. Mullen Dep. [79-2] at 27:9-15.) The absence of proof of any false representations, in addition to Dr. Mullen's voluntary and knowing

payment of premiums for insurance coverage, requires that summary judgment be granted on count two of the Complaint.

### 4. Unjust Enrichment (Count Four)

"An unjust-enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to equity and good conscience." *Langham v. Behnen*, 39 So. 3d 970, 976 (¶ 14) (Miss. Ct. App. 2010) (quoting *1704 21st Ave., Ltd. v. City of Gulfport*, 988 So. 2d 412, 416 (¶ 10) (Miss. Ct. App. 2008)) (internal quotation marks omitted). Unjust enrichment applies in the absence of a legal contract, and where "the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (¶ 14) (Miss. 2012) (citing *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)). For a plaintiff to recover under this rule, the party to whom the mistaken payment was made must be left in the same position after refund as he would have been in the absence of the initial payment to him. *See id.* (citations omitted).

Dr. Mullen contends that Nationwide was unjustly enriched in collecting premiums on a policy under which it would deny any property claim since the subject dwelling was uninhabitable and devoid of contents and personal property. (*See* Pl.'s Mem. in Opp. [87] at p. 12.) The Court finds that this claim does not survive summary judgment on several grounds. First, Dr. Mullen's speculative allegation that Nationwide would deny a property damage claim under the Policy is precisely the type of unsubstantiated assertion that is "insufficient to avoid summary judgment." *Sanchez v. Carollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011); *see also*

*Oliver*, 276 F.3d at 744. Dr. Mullen made no claim for coverage in any relevant Policy period and the Court is unwilling to speculate as to what Nationwide would or would not have done in the event of such a claim.

Second, an insurance contract existed between Dr. Mullen and Nationwide at all times relevant to this action. It is well settled that an insurance policy is an enforceable contract between an insurer and an insured. *See, e.g.*, *Miss. Ins. Guar. Ass'n v. Blakeney*, 54 So. 3d 203, 205 (¶ 6) (Miss. 2011); *Smith v. Med. Life Ins. Co.*, 910 So. 2d 48, 51 (¶ 9) (Miss. Ct. App. 2005). It is also well settled that the existence of an actual contract precludes any claim for unjust enrichment, which is based on a contract implied-in-law. *See, e.g.*, *Spansel v. State Farm Fire & Cas. Co.*, 683 F. Supp. 2d 444, 453 (S.D. Miss. 2010); *Mayer v. Angus*, 83 So. 3d 444, 451 (¶ 24) (Miss. Ct. App. 2012).

Third, Dr. Mullen is precluded from recovering any premiums from Nationwide since they were paid voluntarily and "there can be no return of premium once the risk has attached and benefit has been derived from the contract, since in such cases the premium is considered earned . . . ." *Smith v. Am. Nat'l Ins. Co.*, 242 Miss. 638, 644-45, 136 So. 2d 622 (Miss. 1962) (citing 44 *C.J.S. Insurance* § 406). The specific titles of the claims asserted by the plaintiffs in *Smith* are not evident, but their substance compares favorably with Dr. Mullen's unjust enrichment claim. The *Smith* plaintiffs sought return of purportedly excessive and discriminatory premiums paid to a life and disability insurer from 1932 through 1957. *See id.* at 642. In affirming the trial court's dismissal of the complaint, the Mississippi Supreme Court provided:

The record shows that these payments were voluntarily made. There was no

coercion, compulsion, or necessity for payment shown in this record, except it be argued that it was necessary for him to pay his premiums in order that he might keep the contract in force. Certainly the appellee, Thomas, knew of the facts with reference to this entire matter. His payments were entirely voluntary; he might pay or not, as he saw fit. If he paid the annual premiums, his contract was in force; if he declined to pay, his rights under the contract ceased. It is a general rule that money voluntarily paid under a claim of right for the payment and with knowledge of the facts by the person making the payment may not be recovered on the idea that the claim paid was illegal or not due, or that claimant was not liable therefor. This rule applies here, and has been recognized by this court uniformly with the other courts of this country.

*Id.* at 645 (quoting *Aetna Life Ins. Co. v. Thomas*, 166 Miss. 53, 144 So. 50 (Miss. 1932)) (citing *Menge & Sons v. Gulf & S. I. R. Co.*, 97 Miss. 810, 53 So. 424 (Miss. 1910); *Town of Wesson v. Collins*, 72 Miss. 844, 18 So. 360 (Miss. 1895)). *Smith* is the final straw for count four of Dr. Mullen's Complaint.

### III. CONCLUSION

Based on the foregoing, summary judgment in favor of Nationwide is appropriate in this case.[4]

IT IS THEREFORE ORDERED AND ADJUDGED that Nationwide's Third Motion for Summary Judgment [79] is granted. A separate judgment will be entered this date in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 18th day of January, 2013.

                            *s/Keith Starrett*
                            UNITED STATES DISTRICT JUDGE

---

[4] There is no need for a detailed analysis of Dr. Mullen's punitive damages claim. (*See* Compl. [1] at ¶ XXIV.) "[T]here can be no punitive damages absent an award of actual damages." *Wilbanks v. Gray*, 795 So. 2d 541, 548 (¶ 30) (Miss. Ct. App. 2001) (citing *Snow Lake Shores Prop. Owners Corp. v. Smith*, 610 So. 2d 357, 362 (Miss. 1992)); *see also* Miss. Code Ann. § 11-1-65(1)(c).